**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>    v.<br><br>DAVID GIL-GRANDE,<br>    *Defendant*. | No. 3:16-cr-19 (VAB) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

David Gil-Grande ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 1129 (July 14, 2020) ("Mot."). The Government opposes his motion. Mem. in Opp'n, ECF No. 1132 (July 22, 2020) ("Gov't Opp'n").

For the reasons set forth below, Mr. Gil-Grande's motion for compassionate release is **DENIED**.

## I.      BACKGROUND

On November 8, 2016, Mr. Gil-Grande pled guilty to conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii), a lesser included offense of Count One of the Indictment. Plea Agreement, ECF No. 416 (Nov. 8, 2016).

On January 31, 2017, Judge Alfred V. Covello sentenced Mr. Gil-Grande to a term of imprisonment of 70 months, a term of four years of supervised release, and a special assessment of $100. J., ECF No. 496 (Feb. 6, 2017); Min. Entry, ECF No. 487 (Jan. 31, 2017).

On June 26, 2020, Mr. Gil-Grande moved to modify his sentence, requesting he be released to home confinement. Motion for Sentence Modification, ECF No. 1123 (June 26, 2020).

1

That same day, counsel was appointed to represent Mr. Gil-Grande. Appearance, ECF No. 1123 (June 26, 2020).

On July 14, 2020, Mr. Gil-Grande filed a modified motion to reduce his sentence. Mot.

On July 22, 2020, the Government opposed Mr. Gil-Grande's motion. Gov't Opp'n.

On September 25, 2020, the Court held a telephonic motion hearing. Min. Entry, ECF No. 1149 (Sept. 25, 2020).

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

### III.   DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, -- F. 3d. --, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) ("[B]ecause [Mr.] Gonzales  – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 2020 WL 5739712, at *8) (internal citations omitted).

Mr. Gil-Grande moves the court "to reduce his sentence to time served with a period of nine months of confinement as a condition of supervised release," Mot. at 1, because "the compassionate release statute allows courts to reduce sentences for 'extraordinary and compelling reasons.'" *Id.*  Mr. Gil-Grande attests that he "has already been diagnosed" with COVID-19 during his time in prison.[1] *Id.* at 5.

Mr. Gil-Grande argues that "[t]he growing coronavirus pandemic, which public health experts and policymakers recognize is especially dangerous in the confines of correctional institutions, in combination with Mr. Gil-Grande's existing diagnosis of COVID-19 and his ethnicity (Hispanic [o]rigin, born in Puerto Rico), is an extraordinary and compelling

---

[1] According to Mr. Gil-Grande's medical records, he tested positive for COVID-19 on June 10, 2020. Medical Records, ECF No. 1131, at 2.

circumstance." *Id.* at 1-2 (citation omitted). He also argues that the facility where he is housed, FCI Butner Low, "is perhaps among the worst facilities in the country in terms of its rate of infection among inmates . . . [and] poses an increased risk to inmates."[2] *Id.* at 9.

The Government opposes Mr. Gil-Grande's motion and argues that "Mr. Gil-Grande never filed a request for compassionate release with the Warden and therefore has not fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf." Gov't Opp'n. at 4 (internal quotations omitted). The Government also contends that the Court "should deny [Mr.] Gil-Grande's motion on the merits" because "[he] has contracted the virus and has now recovered" and "potential COVID-19 exposure is not by itself an extraordinary and compelling reason to grant release under any circumstances." *Id.* at 7. The Government argues that "[t]he only factor [Mr.] Gil-Grande relies on to support his motion is that he is of Hispanic heritage . . . [which] does not rise to the level of extraordinary and compelling, particularly since the risk is a product of long-standing health and social inequities." *Id.* at 8 (internal quotation marks omitted).

The Government also "opposes his release based on the need to protect the public and the need for the sentence to reflect just punishment and promote respect for the law," arguing that because Mr. Gil-Grande was "responsible for the large-scale importation of cocaine from Puerto Rico to Hartford where he distributed it to other cocaine and crack dealers . . . [and] for a cocaine conspiracy involving five and fifteen kilograms of cocaine," and has twice been sanctioned as an inmate, "release is . . . not appropriate." *Id.* at 8–9.

---

[2] As of October 1, 2020, 588 inmates at FCI Butner Low had tested positive for COVID-19. *See COVID-19 Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited October 2, 2020). As of the same date, the facility had two active cases, with one inmate and one staff member testing positive. *See id.*

The Court will address each of the relevant factors in turn, turning first to the question of exhaustion.

### 1. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Gil-Grande sent a request for home confinement to the BOP on July 1, 2020. ECF No. 1129, Ex. B. Thirty days did not lapse from the receipt of the request before Mr. Gil-Grande filed for relief before this Court on July 14, 2020. Mot.

Numerous courts within the Second Circuit, however, have waived the exhaustion requirement during the COVID-19 pandemic. *See, e.g.*, *United States v. Zukerman*, -- F. Supp. 3d --, 2020 WL 1659880, at *2-4 (S.D.N.Y. 2020); *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2–*3 (S.D.N.Y. Apr. 1, 2020).

"Even where exhaustion is seemingly mandated by statute . . ., the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of completing the administrative process may be waived 'if one of the recognized exceptions to exhaustion applies.'" *United States v. McCarthy*, -- F.Supp. 3d --, 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (quoting *Perez*, 2020 WL 1546422, at *2). These exceptions include: (1) where exhaustion would be futile, including where undue delay due to exhaustion may result in "catastrophic health consequences," (2) where "the administrative process would be incapable of

granting adequate relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118–20.

District courts have found that all three exceptions apply in cases where incarcerated individuals, due to their age and underlying health issues, seek compassionate release in light of the spread of COVID-19. *See, e.g.*, *McCarthy*, 2020 WL 1698732, at *4 ("Even a few weeks' delay carries the risk of catastrophic health consequences for [Mr.] McCarthy . . . [and he] could be unduly prejudiced by such delay. Clearly, given his conditions, [Mr.] McCarthy is at great risk of succumbing to COVID-19."); *Perez*, 2020 WL 1546422, at *3 (waiving exhaustion requirement because delay could result in undue prejudice and render exhaustion futile and inadequate).

The Court agrees and waives the exhaustion requirement for Mr. Gil-Grande, as undue delay in his release could result in catastrophic health consequences for him in light of the COVID-19 pandemic.

### 2. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180 month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition

6

that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *McCarthy*, 2020 WL 1698732, at *5 ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Gil-Grande argues that his "COVID-19 diagnosis in combination with his ethnicity (which places him at a heightened risk) present an extraordinary and compelling basis for a sentence reduction." Mot. at 5. Mr. Gil-Grande does not set forth any additional pre-existing conditions or mitigating risk factors beyond his COVID-19 diagnosis and Hispanic ethnicity.

The Government argues that "[Mr.] Gil-Grande has no physical conditions that increase his risk for serious illness under CDC guidelines" and that "potential COVID-19 exposure is not by itself an extraordinary and compelling reason to grant release." Gov't Opp'n at 7. The Government also contends that Mr. Gil-Grande's ethnicity "alone does not rise to the level of extraordinary and compelling, particularly since the risk is a product of long-standing health and social inequities" which "do not apply to Gil-Grande as a BOP inmate who has equal access to medical care in the facility." *Id.* at 8 (internal quotation marks omitted).

Significantly, other courts have held that a defendant's generalized assertions about how his ethnicity heightens the risk he suffers severe complications from COVID-19 are not alone extraordinary and compelling reasons for release. *See United States v. Monsanto Lopez*, No. 16-cr-643-1 (NRB), 2020 WL 2555305, at *1 (S.D.N.Y. May 20, 2020) (denying motion for compassionate release that was "long on statistics . . . [but] short on specifics" as to how "COVID-19 has more strongly impacted Hispanic males such as [the defendant]" where he "d[id] not purport

7

to suffer from, nor do his . . . medical records and pre-sentence investigation report . . . evidence that he suffers from, a medical condition that the CDC has identified as a risk factor for severe illness from COVID-19"); *United States v. Dimkpa*, C.A. No. 19-cr-443, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020) ("While ethnic minority groups may be more affected by the coronavirus pandemic, current evidence suggests a correlation, not causation."); *United States v. Coria*, C.A. No. 17-cr-616-PJH, 2020 WL 4441135, at *3 (N.D. Cal. Aug. 3, 2020) ("[T]he correlation between racial and ethnic minority groups and the increased likelihood of contracting COVID-19 or experiencing severe illness is acknowledged to be the result of long-standing systemic health and social inequities, not due to a causal relationship between susceptibility to the disease and race or ethnicity."). Mr. Gil-Grande has "fail[ed] to show that [his ethnicity] substantially diminish[es] his ability to provide self-care so as to warrant compassionate release." *Coria*, 2020 WL 4441135, at *3.

As to Mr. Gil-Grande's previous COVID-19 diagnosis, while most district courts to decide the issue have concluded a previous diagnosis is not an extraordinary and compelling reason for release, at least one court has held the other way. *Compare United States v. Otrosinka*, No. 12-cr-300S, 2020 WL 5628060, at *5 (W.D.N.Y. Sept. 21, 2020) (denying compassionate release to defendant who fully recovered from COVID-19); *United States v. Zubkov*, No. 14-cr-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020) (same); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying otherwise meritorious motion for compassionate release where the defendant tested positive for COVID-19 during the pendency of the motion); *United States v. Santiago*, No. 92-cr-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020) ("[A] positive COVID-19 test, even in an individual with risks factors for severe complications or death, [does not] constitute[] an extraordinary circumstance in and of

8

itself."); *and United States v. McCollough*, No. CR-15-336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("[arguments that the d]efendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities"), *with United States v. Malufau*, No. CR-13-860-06 LEK, 2020 WL 4218030, at *1 (D. Hawai'i July 22, 2020) (granting motion for compassionate release where defendant had been previously hospitalized with COVID-19 complications).

The Center for Disease Control reports that there have been no confirmed cases of reinfection six months into the pandemic and cautions that "the number of areas where sustained infection pressure has been maintained, and therefore reinfections would be most likely, remains limited." *See* CDC, Duration of Isolation and Precaution for Adults with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov-hcp/duration-isolation.html. "It is the Court's understanding that there is no clear scientific consensus as to how long immunity to COVID-19 may last." *United States v. Graham*, No. 16 Cr. 786-02, 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020).

In *Otrosinka*, the district court concluded that because the defendant had "already had COVID-19 and is now fully recovered," and had "no underlying medical conditions that make him particularly susceptible to severe illness from COVID-19," release on this basis was not warranted. 2020 WL 5628060 at *5. Like Mr. Otrosinka, Mr. Gil-Grande has also contracted, then recovered from, COVID-19, and has set forth no medical conditions that would put him at heightened risk for reinfection or for experiencing severe illness should he become reinfected. And unlike the defendant in *Malufau*, Mr. Gil-Grande does not contend that he experienced severe complications when he contracted COVID-19. 2020 WL 4218038, at *1 (discussing Mr. Malufau's preexisting

conditions, including obesity, type 2 diabetes, hypertension, hyperlipidemia, and gout, and noting that he was hospitalized for nine days after testing positive for COVID-19).

In any event, the Court need not definitively resolve whether Mr. Gil-Grande has failed to demonstrate an extraordinary and compelling reason for a sentence reduction, because his motion fails for other reasons detailed below.

### 3.  Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]' [ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 2020 WL 1698732 at *5.

Mr. Gil-Grande argues that "[a]lthough the circumstances of the present offense qualified [him] for the serious sentence that this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." Mot. at 10. He contends that "[h]e has been in custody . . . for nearly 54 months," and that "this sentence is sufficient, but not greater than necessary, to serve the purposes of sentencing under § 3553(a)." *Id.* at 11. He claims that he "will not pose a danger to the safety of any other person or to the community" and that he has a "plan to ensure his safe transition to the community" should he be released. *Id.* He also argues that "[i]f he were placed on a lengthy period of home detention any potential risk would be adequately curtailed." *Id.*

The Government argues that Mr. Gil-Grande remains a danger to the community. The Government reminds the Court that Mr. Gil-Grande "was responsible for the large-scale importation of cocaine from Puerto Rico to Hartford where he distributed it to other cocaine and

crack cocaine dealers" and "for a cocaine conspiracy involving between five and fifteen kilograms of cocaine." Gov't Opp'n at 8. The Government argues further that "[d]uring the investigation, investigators stopped [Mr.] Gil-Grande as he was transporting money to acquire additional kilogram quantities of cocaine and seized approximately $92,000." *Id.* In the Government's view, "release is . . . not appropriate because of the need to protect the community and for the sentence to reflect just punishment and promote respect for the law." *Id.*

The Government also notes that "[a]s recently as September 2019, [Mr.] Gil-Grande was sanctioned for possessing a hazardous tool," an incident "on the heels of another sanction for possessing a hazardous tool (cell phone under his pillow)." *Id.* at 9 (citing Inmate Discipline Data, ECF No. 1132-1, Ex. A). The Government notes further that "[Mr.] Gil-Grande was also previously sanctioned for being in an unauthorized area." *Id.* (citing Inmate Discipline Data, Ex. A). As the Government argues, "[w]hile his prison behavior has not been egregious, there is no justification to reward this behavior by reducing his sentence." *Id.*

The Court agrees.

Here, the § 3553(a) factors weigh against Mr. Gil-Grande's release.

Most significantly, Mr. Gil-Grande's current term of incarceration stems from the role he played in a large cocaine distribution conspiracy. Mr. Gil-Grande was "deeply involved in a high-level drug trafficking organization which involved substantial quantities of cocaine and money." Pre-Sentence Report, ECF No. 454 (Jan. 13, 2017). "In addition to supplying [his co-defendants] with cocaine, [Mr.] Gil-Grande collected drug proceeds and routinely drove the money to New York City, where it was shipped to the source of supply in Puerto Rico." Pre-Sentence Report. At sentencing, Mr. Gil-Grande's offense level was 27, with a base offense level of 30, due to the quantity of cocaine involved in his reasonably foreseeable offense conduct. Plea Agreement at 4.

Mr. Gil-Grande's sentence must "reflect the seriousness of the offense . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). *See United States v. Gamble*, 3:18-CR-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (denying motion for release "because Defendant is ill suited for home confinement because of his lengthy criminal history and [because] no conditions [of release] could adequately protect the public"); *United States v. Lopez*, 16-CR-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (denying motion for compassionate release where defendant had sixty-six months left of their sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic"). And, at this time, Mr. Gil-Grande's current term of imprisonment appears to remain necessary to ensure the safety of the community. Finally, as to Mr. Gil-Grande's conduct as an inmate, while a cell phone is not a weapon, possession of this item creates a security risk and violates prison rules.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

## IV.      CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of October, 2020.

          /s/ Victor A. Bolden
          Victor A. Bolden
          United States District Judge